UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR MARTINEZ,<br><br>    Petitioner,<br><br>  v.<br><br>RON BARNES, Warden,<br><br>    Respondent. | No. 2:12-cv-2975 KJM GGH P<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

    Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on November 23, 2010 in the Sacramento County Superior Court on charges of first degree murder (Cal. Penal Code §187(a)), with an enhancement for personally discharging a firearm resulting in death (Cal. Penal Code § 12022.53(d)). He seeks federal habeas relief on the following grounds: (1) the failure by police to collect and preserve evidence violated his due process rights; and (2) his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

/////

1

I. <u>BACKGROUND</u>[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Edgar Martinez shot Jose Segura to death at a house party in Citrus Heights, following an argument in which Segura accused defendant of being a "snitch." The partygoers who testified at trial and were present at the shooting did not see Segura with a weapon.
>
> Defendant, however, testified at trial Segura had a knife, and he was defending himself when he shot Segura. Defendant picked up the knife after the shooting on his way out of the house. He bundled the knife with his gun in a T-shirt and hid the bundle in a box in his aunt and uncle's attic. He then fled to Mexico.
>
> Nineteen months after the murder, defendant was extradited back to California. At that time, the police detective who had been assigned to the murder investigation interviewed defendant. The interview was the first time the detective heard anything about Segura being armed with a knife. The detective decided not to search the aunt and uncle's house for the knife because, except for defendant's statement, he had no reason to believe Segura was armed with a knife.
>
> The jury also did not believe defendant's claim of self-defense and found him guilty of first degree murder.
>
> Defendant appeals. His sole contention is his trial counsel was ineffective because counsel did not request the court sanction the police detective for not searching the aunt and uncle's home for the knife.

(Resp't's Lod. Doct. No. 9, at 1-2.)

/////

/////

/////

---

[1] The state court's factual findings are presumed to be correct unless petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir.2004). "Clear and convincing evidence" within the meaning of § 2254(e) "requires greater proof than preponderance of the evidence" and must produce "an abiding conviction" that the factual contentions being advanced are "highly probable." <u>Cooper v. Brown</u>, 510 F.3d 870, 919 (9th Cir.2007) (quoting <u>Sophanthavong v. Palmateer</u>, 378 F.3d 859, 866 (9th Cir.2004)), <u>cert. denied</u>, 130 S. Ct. 749 (2009). Petitioner has not overcome the presumption with respect to the underlying events. This court will therefore rely on the state court's recitation of the facts.

## II. ANALYSIS

### A. AEDPA Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786,

1  citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

2  Accordingly, "a habeas court must determine what arguments or theories supported or …
3  could have supported[] the state court's decision; and then it must ask whether it is possible
4  fairminded jurists could disagree that those arguments or theories are inconsistent with the
5  holding in a prior decision of this Court." Id. "Evaluating whether a rule application was
6  unreasonable requires considering the rule's specificity.  The more general the rule, the more
7  leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the
8  stringency of this standard, which "stops short of imposing a complete bar of federal court
9  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has
10 cautioned that "even a strong case for relief does not mean the state court's contrary conclusion
11 was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

12 The undersigned also finds that the same deference is paid to the factual determinations of
13 state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct
14 subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a
15 decision that was based on an unreasonable determination of the facts in light of the evidence
16 presented in the state court proceeding." It makes no sense to interpret "unreasonable" in §
17 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the
18 factual error must be so apparent that "fairminded jurists" examining the same record could not
19 abide by the state court factual determination.  A petitioner must show clearly and convincingly
20 that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.
21 969, 974 (2006).

22 The habeas corpus petitioner bears the burden of demonstrating the objectively
23 unreasonable nature of the state court decision in light of controlling Supreme Court authority.
24 Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must
25 show that the state court's ruling on the claim being presented in federal court was so lacking in
26 justification that there was an error well understood and comprehended in existing law beyond
27 any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly
28 established" law is law that has been "squarely addressed" by the United States Supreme Court.

4

Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S.Ct. at 365. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).

B. Petitioner's Claims

1. Violation of Due Process Rights by Alleged Police Failure to Collect and Preserve Evidence

Respondent first argues that this claim is unexhausted. The petition for review before the state supreme court makes the argument that the police failed to search for potentially exculpatory

evidence; however, it was in the context of petitioner's claim of ineffective assistance of counsel for failing to request sanctions due to this failure. (Resp't's Lod. Doc. No. 9.)

Nevertheless, even if the briefing before the state supreme court were to be interpreted in this manner, the court may deny an unexhausted claim on the merits without regard to a petitioner's failure to exhaust.[2] 28 U.S.C. § 2254(b)(2); <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir.2005) (holding that an unexhausted petition may be denied on the merits when it is perfectly clear that the applicant does not raise even a colorable federal claim).

Here, the claim that police failed to collect and preserve evidence is not colorable. Petitioner claims that not only did he hide the gun used to kill Segura, but that he also hid Segura's knife with it. This knife, claims petitioner, was used by Segura against him, prompting him to use his own gun in self-defense. Petitioner claims that police refused to search the home for this knife in bad faith and therefore violated his due process rights.

In regard to this claim, which was raised as a sub-issue in regard to his counsel's failure to request sanctions on this basis, the court of appeals found that not only did police not fail to preserve the knife, as petitioner removed it from the crime scene and prevented its discovery, but also that law enforcement was reasonable in declining to search the aunt and uncle's house for the knife because all of the other evidence contradicted the claim of self-defense. (Resp't's Lod. Doc. No. 8 at 3.) Such evidence included the cousin's statement to police wherein he admitted taking the gun from the attic in his parents' house five months after the murder, and using it to commit other crimes, but did not mention a knife hidden with it. He further stated that he was present at the murder, and saw petitioner shoot Segura while Segura "was just 'standing there' with his hands 'just by his sides.'" (<u>Id.</u>) The court of appeals added that all of the other witnesses to the murder, despite their intoxication, testified consistently that petitioner shot Segura, and that Segura was unarmed. (<u>Id.</u>) The court of appeals considered all the facts presented by petitioner's counsel, which do not affect the analysis.[3] Petitioner attempts to argue

---

[2] Although the due process issue was presented under the overall umbrella of ineffective assistance of counsel, the argument was clearly made that the police inaction constituted a violation of due process *per se*. Respondent may be a bit technical in argument here.

[3] Petitioner has attached his counsel's appellate brief as Exhibit A to his petition, which is

1    that these four witnesses (including petitioner's cousin, Octavio), were unreliable either due to
2    their intoxication, inattention or position at the time of the shooting, as well as their allegiance to
3    the Sureno gang which discourages murder of fellow gang members unless approved by a senior
4    gang member. (Resp't's Lod. Doc. No. 5 at 16-17.)  The facts are that the shooting took place on
5    September 7, 2007, that petitioner fled to Mexico immediately after the shooting, and that
6    petitioner did not meet with police for an interview until May 19, 2009, after he was extradited
7    back to the United States. (Id. at 13, 20.)  This meeting was the first time police were informed of
8    the knife and petitioner's claim of self-defense.  In the meantime, police had been informed in
9    February, 2008, that petitioner's cousin had used his gun to commit crimes after he discovered it
10   hidden in the family's attic. (Id. at 13.)   Octavio stated that although he found the gun there, he
11   did not recall seeing a knife there. (Id. at 20.)

12            Due process requires that the prosecution disclose exculpatory evidence within its
13   possession. Brady v. Maryland, 373 U.S. 83, 87 (1963).  However, a failure to preserve evidence
14   violates a defendant's right to due process only if the unavailable evidence possessed
15   "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature
16   that the defendant would be unable to obtain comparable evidence by other reasonably available
17   means." California v. Trombetta, 467 U.S. 479, 489 (1984); Cooper v. Calderon, 255 F.3d 1104,
18   1113 (9th Cir. 2001).  A defendant must also demonstrate that the police acted in bad faith in
19   failing to preserve potentially useful evidence.[4] Arizona v. Youngblood, 488 U.S. 51, 58 (1988);
20   Cooper, 255 F.3d at 1113; see also Guam v. Muna, 999 F.2d 397, 400 (9th Cir. 1993).   This
21   standard also applies to the failure to collect potentially useful evidence. Miller v. Vasquez, 868
22   F.2d 1116, 1120-21 (9th Cir. 1989) ("Since, in the absence of bad faith, the police's failure to
23   *preserve* evidence that is only potentially exculpatory does not violate due process, then a fortiori
24   neither does the good faith failure to *collect* such evidence violate due process") (emphasis in
25   original).  The presence or absence of bad faith turns on the government's knowledge of the

---

referenced in support and contains petitioner's current argument. See also Resp't's Lod. Doc.
No. 5.

[4] Potentially useful evidence is that which can be subjected to tests, the results of which might exonerate the defendant. Youngblood, 488 U.S. at 57.

7

1    apparent exculpatory value of the evidence at the time it was lost or destroyed. Youngblood, 488
2    U.S. at 56-57 n.*; see also United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993). Even
3    negligence in failing to preserve potentially useful evidence is not sufficient to constitute bad
4    faith and does not violate due process. Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997).

5    After a review of the record, this court concludes that the actions of the police in failing to
6    search for, collect or preserve a knife, did not violate petitioner's right to due process. Petitioner
7    has failed to support his contention that a knife existed or that the victim used it at the time of the
8    shooting which caused petitioner to shoot the gun in self-defense, and therefore the result of the
9    proceedings would have been different had counsel searched for the knife. Petitioner's
10   unsubstantiated statements are too conclusory to constitute a cognizable federal claim. See Jones
11   v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir.
12   1994)) ("I[t] is well-settled that [c]onclusory allegations which are not supported by a statement
13   of specific facts do not warrant habeas relief.")

14   Even assuming arguendo that production of the knife may have been potentially useful to
15   the defense, there is no evidence in the record that the failure to preserve this item of evidence
16   was an act of bad faith on the part of the prosecution. The police themselves did not act in bad
17   faith to hide or destroy the knife. Based upon the evidence and facts at their disposal, they
18   reasonably concluded that there was no point in searching for a knife. In short, there is no
19   evidence of bad faith on the part of law enforcement in the record before this court.

20   Petitioner has also failed to demonstrate that the allegedly unavailable evidence was
21   exculpatory in any way or that the police knew that it was exculpatory. No witness testified to the
22   victim's possession of a knife at the time of the shooting. The mere possibility that missing
23   evidence might have proved helpful to the defense is insufficient to establish a due process
24   violation for failure to preserve evidence. See Youngblood, 488 U.S. at 58; Phillips v. Woodford,
25   267 F.3d 966, 986 (9th Cir. 2001) ("The mere failure to preserve evidence which could have been
26   subjected to tests which might have exonerated the defendant does not constitute a due process
27   violation.")
28   /////

Furthermore, petitioner's unsupported claim that he hid the victim's knife is insufficient to establish a claim that police violated his due process rights in failing to search for it. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"); Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

Here, the court finds that this ground for relief does not raise even a colorable federal claim.

### 2. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance in failing to request sanctions for the police's failure to search for potentially exculpatory evidence. (Pet. at 5.) Petitioner raised this claim in state court. (Resp't's Lod. Docs. 5, 9 .) The California Court of Appeal provided the last reasoned state court decision, ruling as follows:

> Defendant claims the "police acted in bad faith by not searching for and preserving potentially useful evidence in violation of [his] federal constitutional right[ ] to due process," and trial counsel should have requested sanctions. The seminal case he cites for this argument is Arizona v. Youngblood (1988) 488 U.S. 51 [102 L.Ed.2d 281]. That case "hold[s] that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." ( Id. at p. 58 [102 L.Ed.2d at p. 289].)
>
> That case does not apply for two reasons. One, the police did not fail to preserve the knife. Defendant did. According to defendant's own trial testimony, he removed the knife from the crime scene, thereby preventing its discovery. Two, the police did not act in bad faith. The detective reasonably decided not to search the aunt and uncle's house for the knife because all the evidence contradicted defendant's self-serving claim of self-defense. This included a statement to the detective by defendant's cousin (who saw defendant shoot Segura when Segura was just "standing there" with his hands "just by his sides"). The cousin admitted that five months after the murder, he took defendant's gun from his parents' attic to perpetrate a series of armed robberies but never mentioned anything about a knife being bundled with the gun.
>
> Defendant makes much of testimony that some of the witnesses to the murder were intoxicated and their versions of events were not entirely consistent. What he fails to appreciate is that on the point that matters, they all testified consistently defendant shot an unarmed Segura. Defense counsel was not deficient in failing to ask

> the court to sanction law enforcement officers. (See People v..
> Waidla (2000) 22 Cal.4th 690, 718 [counsel's deficient performance
> is the first prong of an ineffective assistance of counsel inquiry].)

(Resp't's Lod. Doc. 8 at 2-4.)

### a. Legal Standards Regarding Ineffective Assistance of Counsel

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 131 S. Ct. at 787-88. (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 131 S. Ct. at 789. Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed

1  decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th
2  Cir. 1995) (quoting Sanders, 21 F.3d at 1456 (internal citation and quotations omitted). See also
3  Porter v. McCollum, 558 U.S. 30, ___, 130 S. Ct. 447, 453 (2009) (counsel's failure to take "even
4  the first step of interviewing witnesses or requesting records" and ignoring "pertinent avenues for
5  investigation of which he should have been aware" constituted deficient performance). On the
6  other hand, where an attorney has consciously decided not to conduct further investigation
7  because of reasonable tactical evaluations, his or her performance is not constitutionally deficient.
8  See Siripongs v. Calderon, 133 F.3d 732, 734 (9th Cir. 1998); Babbitt v. Calderon, 151 F.3d
9  1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not
10 to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'"
11 Wiggins v. Smith, 539 U.S. 510, 533 (2003) (quoting Strickland, 466 U.S. at 691).
12     A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time
13 of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting
14 Strickland, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a duty to
15 investigate must be considered in light of the strength of the government's case.'" Bragg v.
16 Galaza, 242 F.3d 1082, 1088 (9th Cir. 2011) (quoting Eggleston v. United States, 798 F.2d 374,
17 376 (9th Cir. 1986)). See also Rhoades v. Henry, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel
18 did not render ineffective assistance in failing to investigate or raise an argument on appeal where
19 "neither would have gone anywhere").
20     Under AEDPA, "[t]he pivotal question is whether the state court's application of the
21 Strickland standard was unreasonable." Id. at 785. "[B]ecause the Strickland standard is a
22 general standard, a state court has even more latitude to reasonably determine that a defendant has
23 not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).
24     Prejudice is found where "there is a reasonable probability that, but for counsel's
25 unprofessional errors, the result of the proceeding would have been different." Strickland, 466
26 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the
27 outcome." Id. "The likelihood of a different result must be substantial, not just conceivable."
28 Richter, 131 S. Ct. at 792.

b. <u>Analysis</u>

Petitioner contends that he received ineffective assistance of counsel because his trial counsel failed to request sanctions for the police's failure to search for exculpatory evidence which violated his due process rights. The appellate brief he has attached as "supporting facts" argues that trial counsel should have requested exclusion of testimony that witnesses did not see a knife, exclusion of the detective's testimony about why he did not search for the knife, and a special instruction that the police's failure to search for the knife could be used to support petitioner's claim of self-defense or a lesser degree of homicide. (Pet., Ex. A at 21.) Based on the finding in the previous section, that the police did not violate petitioner's due process rights, counsel could not have been ineffective in failing to request sanctions where there was clearly no violation.

Petitioner has failed to demonstrate that the state court's rejection of his ineffective assistance of counsel claim was an unreasonable application of federal law. The California Court of Appeals found that petitioner himself prevented police from discovering the knife since he removed it from the crime scene. Even after the police were informed by petitioner some nineteen months after the shooting that the knife was in his cousin's attic, the court found the police acted reasonably in declining to search for the knife because all of the other evidence contradicted petitioner's claim of self-defense. There were multiple witnesses who all consistently stated that the victim was unarmed. Petitioner's cousin, who took petitioner's hidden gun from the attic to commit his own crimes, never mentioned that a knife had been bundled with the gun. For these reasons, the court of appeals' decision that defense counsel was not ineffective in failing to seek sanctions against the law enforcement officers, was not contrary to or an unreasonable application of federal law. Therefore, petitioner is not entitled to relief on this claim.[5]

/////

---

[5] In his traverse, petitioner claims for the first time that his arrest and extradition violated the constitution, and that his trial attorney failed to raise this argument. Claims raised for the first time in a traverse will not be considered. <u>See</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir.1994) ("a traverse is not the proper pleading to raise additional grounds).

### C. Petitioner's Request for Evidentiary Hearing

In his traverse, petitioner has requested an evidentiary hearing. In Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011), the United States Supreme Court held that federal review of habeas corpus claims under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits."[6] 131 S. Ct. at 1398. Therefore, evidence introduced at an evidentiary hearing in federal court may not be used to determine whether a state court decision on the merits of a petitioner's habeas claim violates § 2254(d). Id. Following the decision in Pinholster, the holding of an evidentiary hearing in a federal habeas proceeding is futile unless the district court has first determined that the state court's adjudication of the petitioner's claims was contrary to or an unreasonable application of clearly established federal law, and therefore not entitled to deference under § 2254(d)(1), or that the state court unreasonably determined the facts based upon the record before it, and therefore deference is not warranted pursuant to § 2254(d)(2).

Even on a more basic level, petitioner goes no distance in telling us what happened to the supposed knife after it was deposited in his relatives' house. It would have been fairly logical for petitioner to have written his aunt and uncle, telling them where to look for the knife, and then having it produced or inspection. The record is silent as to such basic information. While the production of such evidence at this time, if it truly exists at all, would be quite problematic and suspect, petitioner has not even tried.

Here, this court has already determined that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Nor was it an unreasonable determination of the facts. Therefore, petitioner's request for an evidentiary hearing is denied.

### III. CONCLUSION

For all of the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

---

[6] Even where a claim for habeas relief is simply summarily denied by the state court on the merits without discussion or analysis, as was the case in Pinholster, the federal habeas court is still ordinarily limited to consideration of the record that was before the state court. 131 S. Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial.").

13

appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

For the reasons stated herein, IT IS ORDERED that: Petitioner's motion for evidentiary hearing, filed May 30, 2013 (ECF No. 14), is denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 24, 2013

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Mart2975.hc